UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEVONTAY AYCOCK,

Petitioner,

v.

ELY STATE PRISON[1],

Respondents.

Case No. 3:23-cv-00079-ART-CSD

ORDER

Petitioner Devontay Aycock filed a counseled second amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 27.) This matter is before the Court for adjudication of the merits of the second amended petition, which alleges seven claims of ineffective assistance of counsel. For the reasons discussed below, the Court denies the second amended petition, denies a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

**I.    Background**

**a.  Factual Background[2]**

In November 2018, Aviane Knox was at his home in Las Vegas, Nevada with his five-month-old baby, the mother of his baby, his brother, and his mother. ECF No. 36-12 at 10. A group of people gathered in the street outside of Knox's

---

[1] According to the state corrections department's inmate locator page, Aycock is incarcerated at High Desert State Prison ("HDSP"). Jeremy Bean is the current warden of that facility. At the end of this order, the Court directs the Clerk to substitute Jeremy Bean as respondent for Respondent Ely State Prison. *See* Fed. R. Civ. P. 25(d).

[2] This Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the second amended petition.

1

mother's home. *Id.* Two of the men began fighting in the street. *Id.* During the fight, Knox walked down the driveway and told the group to leave from the front of his mother's home. *Id.* at 10-11. Aycock shot at Knox 17 times. Knox had 10 gunshot wounds on his upper arm, elbow or forearm, two injuries to his back, hand, leg, and upper leg. *Id.* at 12.

### b. Procedural Background

The State charged Aycock and his co-defendant, Ryan Kennedy, with attempt murder with use of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm, and accessory to attempt murder with use of a deadly weapon and/or battery with use of a deadly weapon. ECF No. 34-3. On the first day of trial, the State granted immunity to Kennedy, dismissed the case against Kennedy, and proceeded to trial on the case against Aycock. ECF No. 34-33 at 4.

Following a six-day trial where Aycock testified in his defense, a jury convicted him of attempt murder with use of a deadly weapon and battery with use of a deadly weapon resulting in substantial bodily harm. ECF No. 35-14. The state district court sentenced Aycock to an aggregate term of 8 to 25 years of incarceration. *Id.*

The Nevada Supreme Court affirmed the judgment of conviction on direct appeal. ECF No. 36-22. Aycock filed a state habeas postconviction petition and the state district court denied his state habeas petition. ECF Nos. 36-14, 36-30. The Nevada Court of Appeals affirmed the denial of relief. ECF No. 37-12. Aycock initiated this federal habeas corpus proceeding *pro se.* ECF No. 1. Following appointment of counsel, he filed his first and second amended petitions. ECF Nos. 18, 27.

## II.   Governing Standard for Review

### A. Review Under the Antiterrorism and Effective Death Penalty Act
28 U.S.C. § 2254(d) sets forth the standard of review generally applicable

in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

**B. Standard for Ineffective Assistance of Counsel Claims**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). Courts considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at

105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### III. Discussion

#### a. Ground 1—Ineffective Assistance re: Failure to Request Trial Continuance

In Ground 1, Aycock alleges that trial counsel rendered ineffective assistance for failure to request a trial continuance after the State granted his co-defendant, Kennedy, immunity and dismissed their case against Kennedy on the morning of Aycock's trial. ECF No. 27 at 8. He asserts that counsel prepared for trial and developed a strategy predicated on joint prosecution. ECF No. 50 at 3. Counsel did not investigate Kennedy to develop impeachment evidence as an adverse witness and did not assess the impact on the prosecution's narrative, particularly as it related to self-defense. *Id.*

At trial, Kennedy testified that he had destroyed his firearm after the shooting, and Aycock argues that lead to the insinuation that Aycock also destroyed his firearm. ECF No. 27 at 9. Aycock asserts that had trial counsel requested a continuance he would have had time to prepare a challenge to the admission of testimony or strategize ways to incorporate it into the theory of defense. *Id.*

#### i. Additional Background Information

At trial, the State presented surveillance video of Aycock shooting Knox while Knox was on the ground with his hands up. ECF No. 35-6 at 97, 124-25.

Aycock was only approximately two feet away from Knox when he shot him five additional times while he was on the ground. *Id.* at 137. The State presented evidence that Aycock initially denied to the police that he was present at the shooting. *Id.* at 133. Even after the police presented Aycock with photographs of him fleeing the scene, Aycock denied that he was involved with the shooting. *Id.* at 133.

Aycock testified that he did not know Knox and did not have any beef with him. *Id.* at 63. He admitted that he shot Knox. *Id.* at 91. He testified that he shot because "somebody was reaching for something, out of self-defense." *Id.* He admitted that he never saw a gun. *Id.* at 97-98. Aycock testified that he "was trying to get away," and that he "wasn't even focused." *Id.* at 98. During questioning Aycock told police that at one point everyone in the group looked suspicious. *Id.* at 99.

Kennedy testified that he was driving in his challenger after the shooting started and he shot out of the window a couple of times at people that were shooting at him. ECF No. 35-3 at 112, 119-121, 35-6 at 132. Aycock got into Kennedy's car and Kennedy testified that Aycock was shot at. ECF No. 35-3 at 116. During direct examination, the State read Kennedy's statement to the police providing that Aycock was laughing when he got into Kennedy's car. *Id.* at 117. Kennedy testified that he did not recall that statement and/or that was not his statement. *Id.* He testified that he informed police that the gun he had that day was destroyed. *Id.* at 123.

Knox's brother, Xaviene Washington, testified at trial. ECF No. 35-2 at 50. He testified that a fight between two individuals occurred related to "baby mama drama." *Id.* at 59-60. He observed his brother walk down the driveway telling the group to leave from in front of his mother's house. *Id.* at 61. Washington testified that Knox did not threaten anyone and did not have any weapons on him. *Id.* at 62. Washington observed his brother get shot. *Id.* at 66.

### ii. State Court Determination

The Nevada Court of Appeals held:

[Aycock] also claimed that trial counsel was ineffective for failing to request a trial continuance in order to interview the codefendant after the grant of immunity. "It is appellant's responsibility to present relevant authority and cogent argument . . . ." *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Aycock acknowledges there is no relevant authority to support his argument that an objection to the timeliness of the granting of immunity would have been successful. [FN 2] Thus, he failed to demonstrate counsel was deficient for failing to object to the timing of the grant of immunity or a reasonable probability of a different outcome at trial had counsel objected. Further, the only portion of the codefendant's testimony that Aycock argued was problematic related to the codefendant's destruction of his firearm. However, Aycock failed to demonstrate that interviewing the codefendant would have caused his testimony to be objectionable or allege how different cross-examination would have affected the outcome of trial. Thus, Aycock failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had counsel asked for and received a continuance. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

> [FN 2] To the extent Aycock appears to allege that counsel should have objected to the witness testifying and not just to the grant of immunity, this claim was raised for the first time in his reply brief, and we decline to consider it. *See LaChance v. State*, 130 Nev. 263, 277 n.7 (2014).

ECF No. 37-12 at 11-12.

### iii. Analysis

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The Nevada appellate court's determination that Aycock failed to demonstrate prejudice was not an unreasonable application of *Strickland*. Aycock failed to demonstrate a reasonable probability that, but for his counsel's failure to request a continuance, the result of the trial would have been different. The State presented surveillance video showing Aycock shooting the victim while he was on the ground with his hands raised. Aycock admitted at trial that he shot Knox. Even though Aycock believed Knox was reaching for something, he did not

see a gun. A witness testified to observing Aycock flee the scene.

Aycock argues that if trial counsel requested a trial continuance, counsel would have been able to investigate Kennedy's background to challenge his credibility and investigate the firearm destruction issue. ECF No. 50 at 4. As provided by the Nevada Court of Appeals, Aycock did not demonstrate how interviewing the codefendant would have caused his testimony to be objectionable or allege how different cross-examination would have affected the outcome of trial. Attacking Kennedy's credibility would not rebut the strong evidence that Aycock shot Knox while he was on the ground. In addition, to the extent that Kennedy's testimony that he destroyed his gun after the shooting leads to the insinuation that Aycock also destroyed his gun and was acting with the consciousness of guilt, the State presented evidence that Aycock fled the scene and that he initially denied that he was present at the shooting or that he was involved in the shooting. In light of the evidence presented against Aycock, he failed to demonstrate prejudice. Aycock is denied federal habeas relief for Ground 1.

### b. Ground 2—Ineffective Assistance re: Reservation of Opening Statement

In Ground 2, Aycock alleges that trial counsel rendered ineffective assistance for reserving his opening statement until after the State rested its case. ECF No. 27 at 10. He further argues that trial counsel's short opening statement lacked substance, failed to address the evidence or introduce Aycock's theory of the case, and prejudiced Aycock. *Id.* at 11. Trial counsel did not confer with Aycock on his decision to reserve his opening statement. ECF No. 50 at 7. Aycock alleges that had trial counsel presented an opening statement, jurors would be primed to look for ambiguity, conflicting testimony, and reasonable doubt in the prosecution's case. *Id.* at 9.

### i. State Court Determination

The Nevada Court of Appeals held:

Aycock claimed that trial counsel was ineffective for reserving his opening statement. Further, he claimed that counsel was ineffective for making only a short, ineffectual opening statement after the close of the State's case. While counsel's opening statement made after the close of the State's argument was brief, opening statements are not evidence on which the jury may rest its verdict. *See Rodriguez v. State*, 128 Nev. 155, 160 n.3, 273 P.3d 845, 848 n.3 (2012). Further, Aycock failed to offer a proposed different opening statement and did not make any specific claims as to what was defective about the opening statement given. The evidence at trial demonstrates that Aycock admitted to shooting the victim a total of 17 times, and as stated by the supreme court on appeal from Aycock's judgment of conviction, the surveillance video of the altercation shows Aycock continuing to shoot the victim as the victim lay in the street with his hands raised in a defensive posture. *See Aycock v. State*, No. 79684, 2021 WL 2432449, at *1 (Nev. June 11, 2021) (Order of Affirmance). Thus, Aycock cannot demonstrate a reasonable probability of a different outcome at trial had counsel not reserved his opening statement or made a longer opening statement. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 37-12 at 3.

### ii. Analysis

The Nevada appellate court's determination that Aycock failed to demonstrate prejudice was not an unreasonable application of *Strickland*. The decision whether to make an opening statement is generally a tactical decision which does not constitute basis for a claim of ineffective assistance of counsel. *See United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985). As provided by the Nevada Court of Appeals, opening statements are not evidence on which the jury may rest its verdict. The State presented surveillance video showing Aycock shoot the victim while the victim was laying on the ground and Aycock admitted to shooting at the victim 17 times. Although a more compelling opening statement may have framed the facts and gave the jurors a roadmap for Aycock's theory of defense, a more compelling opening statement would not have created a reasonable probability of a different outcome at trial. In light of the evidence of guilt and the lack of evidence supporting his self-defense theory, counsel's decision to reserve his opening statement until after the State's case was not prejudicial. Aycock is denied federal habeas relief for Ground 2.

### c. Ground 3—Ineffective Assistance re: Failure to Prepare and Failure to Object to Improper Cross-Examination

In Ground 3, Aycock alleges that his trial counsel rendered ineffective assistance of counsel for failure to prepare Aycock to testify at trial and for failure to object to improper cross-examination techniques. ECF No. 27 at 11. He alleges that during direct examination, trial counsel attempted to question Aycock regarding the surveillance video of the event, but he was not prepared to discuss the video and declined to discuss the video. *Id.* at 11-12. After relenting to review the video, he asserts that his attorney's insistence to discuss the video made him look hostile and difficult to the jury. *Id.*

In addition, during direct examination, trial counsel asked Aycock why he did not like talking to police, and in response, Aycock referenced his gross misdemeanor gun case. *Id.* at 12. He alleges that trial counsel failed to prepare him to refrain from offering damaging testimony regarding his previous case that would not have been admissible if offered by the prosecution. *Id.* Further, he contends that trial counsel should have presented evidence that Aycock was legally permitted to carry a firearm. *Id.*

During cross-examination, the State referenced a transcript of Aycock's interrogation that Aycock had never seen, despite the transcript being disclosed in discovery. *Id.* The State read portions of the transcript into the record. *Id.* Aycock asserts that such tactic is contrary to Nevada state court precedent. *Id.* at 12-13.

### i. State Court Determination

The Nevada Court of Appeals held:

> Aycock claimed that trial counsel was ineffective for failing to adequately prepare him to testify. Specifically, Aycock claimed that counsel did not prepare him to discuss the video of the incident because, during trial, Aycock initially refused to participate in that line of questioning. Further, he claimed counsel did not properly prepare him to testify because, on direct examination, he voluntarily stated he had a prior conviction that was not otherwise admissible

at trial.

At trial, counsel asked Aycock a few times if he wanted to go through the video while he was testifying. Aycock stated it was not necessary. Later in his testimony, Aycock agreed it would be helpful and he and counsel went through the video. Aycock appeared to know what was on the video, was able to speak about it, and requested counsel to go to certain areas of the video to show different things. Thus, Aycock appeared prepared for his testimony, and Aycock does not allege how further preparation would have had a reasonable probability of changing the outcome at trial.

Trial counsel stated on the record at trial that he had informed Aycock he did not need to disclose that he had been previously convicted of a gross misdemeanor related to guns. While it is possible counsel could have made it clearer to Aycock that he did not need to disclose his prior conviction, Aycock failed to demonstrate he was prejudiced. The gross misdemeanor was only mentioned twice by Aycock, and the State neither questioned him regarding the prior conviction nor mentioned it during closing arguments. Thus, the reference was brief, and given the evidence presented at trial, Aycock failed to demonstrate a reasonable probability of a different outcome at trial had counsel further informed Aycock that he should not mention his prior conviction. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

Aycock claimed that trial counsel was ineffective for failing to object to improper cross-examination. Aycock claimed the State improperly used a transcript to impeach and refresh Aycock's memory, which resulted in portions of the transcript simply being read into the record. A witness's recollection may, be refreshed by the use of a writing. *See* NRS 50.125. "Before refreshing a witness's memory it must appear that the witness has no recollection of the evidence to be refreshed." *Jeremias v. State*, 134 Nev. 46, 53, 412 P.3d 43,, 50 (2018) (internal quotation marks omitted). Further, prior inconsistent statements are admissible to impeach a witness's testimony. *See* NRS 51.035(2)(a)-(b). The State also may generally seek admission of a defendant's statements. *See* NRS 51.035(3).

Counsel objected to the State reading the transcript into the trial, and it was sustained. After the objection, the State proceeded to use the transcript to impeach and refresh Aycock's recollection. Specifically, the State would ask whether Aycock said something to the detectives, Aycock would either deny saying it or claim he said something else, then the State would use the transcript to impeach him or refresh his recollection. This was proper use of the transcript to either impeach Aycock with his prior inconsistent statements or to refresh his recollection. Further, while the transcript was not admitted at trial, the jury had already viewed the video of the transcribed interview and had the video to review in the jury room. And Aycock did not allege that the transcript materially differed from the video of the interview. Thus, Aycock failed to demonstrate counsel was deficient for failing to further object and failed to demonstrate a reasonable probability of a different outcome at trial

had counsel objected. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 37-12 at 6-7.

### ii. Analysis

The state appellate court's determination is neither contrary to nor constitutes an unreasonable application of federal law, as determined by the Supreme Court, and is not based on any unreasonable determinations of fact.

Counsel's actions preparing Aycock to testify regarding the surveillance video do not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As noted by the Nevada Court of Appeals, Aycock appeared to know what was on the video, was able to speak about it, and requested counsel to go to certain areas of the video to show different things. Aycock appeared prepared for his testimony despite initially responding that he did not want to review the video.

In addition, trial counsel informed the state district court that he explained to Aycock that Aycock did not need to talk about his gross misdemeanor conviction and the state district court highlighted that trial counsel did not ask any questions trying to elicit that information. ECF No. 35-6 at 103. Even if counsel could have further emphasized to Aycock that he did not need to disclose his prior conviction, Aycock fails to demonstrate a reasonable probability of a different outcome. Aycock's reference to his prior conviction was brief, the State did not question Aycock about his prior conviction, and the State did not mention the prior conviction at closing. In addition, during his direct-examination, Aycock testified that his firearm was registered, legally purchased, and that Aycock had no felonies. ECF No. 35-6 at 60-61.

The Nevada appellate court reasonably found that counsel was not deficient, and no resulting prejudice based on counsel's alleged failure to further object to the State using the transcript of Aycock's interrogation at trial. Trial

objected to the State reading the transcript into the record, which was sustained. Aycock relies on the portion of Nevada state court case, *Jeremias v. State*, 412 P.3d 43, 53-4 (Nev. 2018), providing that a prosecutor is not authorized to guide a defendant's testimony "under the guise of refreshing his recollection," if he is unable to remember what he told police verbatim. As noted by the Nevada appellate court, however, the State properly used the transcript to either impeach Aycock with his prior inconsistent statements or to refresh his recollection when Aycock either denied saying something or testified that he said something else. The State did not introduce the transcript under the guise of refreshing Aycock's recollection by arguing that Aycock did not recall what he told police word-for-word. Nonetheless, the jury already had the video of the transcribed interview, and the transcript did not differ materially from the video. Aycock is denied federal habeas relief for Ground 3.

### d. Ground 4—Ineffective Assistance re: Failure to Call Witness

In Ground 4, Aycock alleges that trial counsel rendered ineffective assistance of counsel for failure to prepare for trial and for failure to call witnesses to support his theory of self-defense. ECF No. 27 at 13. He asserts that trial counsel should have called Jermaine Leavy, who watched the incident while on FaceTime. In his voluntary statement, Leavy described Knox as a "big homie," who was sitting in the garage watching the fight, Leavy observed Knox get up from his seat in the garage, walk out aggressively like he was going to fight, and explained that Knox didn't usually get up for anything so he believed when Knox got up that it was "going to be bad." ECF No. 37-12 at 5. Aycock alleges that although the prosecution presented Knox as an innocent bystander, he was actually a known gang member who the other men were intimidated by. ECF No. 27 at 14.

### i. State Court Determination

The Nevada Court of Appeals held:

Aycock claimed that trial counsel was ineffective for failing to interview, subpoena, and call a witness. He claimed this witness would have testified that the victim left his garage in an aggressive manner, like he was going to participate in a fight. Aycock claimed this testimony would have supported his self-defense claim. The witness's voluntary statement to the police showed that he watched the fight on his phone. The witness stated that he knew the victim and that the victim exited the garage aggressively like he was going to fight. He saw the victim walk toward Aycock. The witness said the victim looked like "he had nothin" and he saw the victim approach Aycock. He saw Aycock shoot the victim several times and the victim fell. He saw Aycock walk toward the victim with the gun pointed at the victim. Someone bumped into Aycock, and everyone started running and shooting. Based on this voluntary statement and the evidence presented at trial, Aycock failed to demonstrate prejudice because the testimony of this witness would not have had a reasonable probability of changing the outcome of the trial. *See Culverson v. State*, 106 Nev. 484, 487, 797 P.2d 238, 239 (1990) (providing requirements for justifiable homicide); *see also* NRS 200.200 (providing the requirements for self defense to apply); NRS 200.275 (applying the self-defense requirements beyond homicide). Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 37-12 at 5.

### ii. Analysis

The Nevada appellate court's rejection of Aycock's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*. The Nevada Court of Appeals reasonably determined that he failed to demonstrate prejudice. "[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *opinion amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001). Leavy's testimony would not have raised a reasonably probability of a better outcome at trial when considered in light of all the evidence, including Aycock's testimony. The jury heard Aycock's testimony that he believed that Knox had a gun and that he believed he was in danger the whole time. ECF No. 35-6 at 57, 62. Aycock didn't hear anyone ask him to leave. *Id.* at 63.

In his voluntary statement, Leavy provided that Knox did not look like he had a gun, that it looked like Knox was going to fight, and that Aycock shot Knox

before any physical altercation occurred. Even if Leavy's testimony would have potentially portrayed Knox as more aggressive than being an innocent bystander, his testimony would have nonetheless supported the prosecution's theory of the case that Aycock did not see Knox pull out a gun and that Aycock shot Knox before any physical altercation with Knox. He cannot show a reasonable probability that the result of the proceeding would have been different. Aycock is denied federal habeas relief for Ground 4.

### e. Ground 5—Ineffective Assistance re: Failure to Move to Object to Hearsay

In Ground 5, Aycock alleges that trial counsel rendered ineffective assistance for failure to object to hearsay related to Knox. ECF No. 27 at 15. Knox did not testify at trial, but his brother, Washington, testified. Although Washington testified that he could not remember the day of the shooting, that a group gathered near his house, or what happened that afternoon, he nonetheless testified as follows on direct examination:

**Q:** What did you hear and see at that point in time?

**A:** I just remember my brother said, get this from in front of my mama's house.

**Q:** You heard what?

**A:** My brother's saying, get this from in front of my mama's house. . . . He was just telling them to move from the front of the house. Like take that somewhere else.

Aycock alleges he was deprived of his right to confront Knox as a witness because the hearsay statement was admitted. Further, he asserts that the hearsay statement was prejudicial because it undermined his theory of self-defense based on Knox exiting the garage aggressively.

### i. State Court Determination

The Nevada Court of Appeals held:

Aycock claimed that trial counsel was ineffective for failing to object

to hearsay testimony. Specifically, Aycock claimed counsel should have objected to a witness's statement that the victim yelled to get the group of people out from in front of his mother's house. Aycock claimed this statement was hearsay and undermined his testimony that the victim approached him in an aggressive manner. The district court concluded this statement was hearsay and should have been objected to. However, the district court concluded Aycock did not demonstrate prejudice resulting from the failure because of the overwhelming evidence of guilt presented at trial. Substantial evidence supports the decision of the district court. As stated in the order affirming his judgment of conviction, Aycock was shown on video shooting the victim while the victim was on the ground with his hands in the air, thus showing that Aycock did not shoot the victim in self defense. *Aycock*, No. 79684, 2021 WL 2432449, at *1. Accordingly, Aycock failed to demonstrate a reasonable probability of a different outcome at trial had counsel objected. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 37-12 at 10-11.

### ii. Analysis

The Court of Appeals' rejection of Aycock's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. The Nevada Court of Appeals reasonably determined that Aycock cannot demonstrate that but for counsel's failure to object to the hearsay statement, there is a reasonable probability of a different outcome at trial. Even if counsel should have objected to Washington's testimony that Knox told the group to leave from the front of his mother's home, the jury would have nonetheless seen the video showing Aycock shooting Knox multiple times while he was on the ground with his hands up. The prosecution presented evidence that Aycock shot Knox before any physical altercation between them occurred. Aycock himself testified that he did not see a gun, but that he observed Knox reaching for something. Aycock is denied federal habeas relief for Ground 5.

### f. Ground 6—Ineffective Assistance re: Failure to Move to Suppress

In Ground 6, Aycock alleges that trial counsel rendered ineffective assistance for failure to move to suppress Aycock's statement to police or request jury instructions regarding the voluntariness of the interrogation. ECF No. 27 at

16

16. During an interview with police, Aycock acknowledged his presence at the shooting and the discharge of a firearm. *Id.* On direct examination, Aycock testified that he did not have a lawyer when he was interviewed by the police and that he did not feel comfortable speaking with them because of their coercive tactics. *Id.* at 17. At trial, Detective Parquette acknowledged that police will make false statements that are designed to see what a suspect will say. ECF No. 50 at 24-25.

### i. State Court Determination

The Nevada Court of Appeals held:

Aycock claimed that trial counsel was ineffective for failing to file a motion to suppress his statement to the police. He also claimed counsel should have requested an instruction on voluntariness. If *Miranda* rights were administered and validly waived, then a "defendant's statements made during a custodial interrogation may be admitted at trial." *Carroll v. State*, 132 Nev. 269, 282, 371 P.3d 1023, 1032 (2016). "The totality of the circumstances is the primary consideration for determining voluntariness.... [T]he question in each case is whether the defendant's will was overborne when he confessed." *Id.* at 279-80, 371 P.3d at 1030 (internal quotation marks, citations, and alterations omitted).

Aycock claimed his statement to detectives was not voluntary as demonstrated by the State's questioning of the detective. Aycock claimed the State engaged in extensive questioning of the detective regarding the giving of Miranda rights and interrogation methods. Further, Aycock testified that he did not have a lawyer during the interview and that he did not want to talk to police officers until he had a lawyer.

At trial, the detective testified he read the *Miranda* warnings to Aycock and Aycock agreed to speak with the detectives and did not invoke his right to remain silent or to have an attorney present. While the detective testified about deceptive interview techniques, the detective did not testify that those deceptive techniques were used against Aycock and specifically denied lying to Aycock. Aycock admitted at trial that he did not clearly ask for counsel to be present, and he did not communicate to the detectives that he was uncomfortable speaking with them. Based on this record, we conclude Aycock failed to demonstrate his will was overborne or that his statement was involuntary. Because Aycock failed to show his statement was involuntary, he failed to demonstrate counsel was deficient for failing to move to suppress his statement or request a jury instruction on the voluntariness of his statement. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 37-12 at 9-10.

### ii. Analysis

The state appellate court's determination is neither contrary to nor constitutes an unreasonable application of federal law, as determined by the Supreme Court, and is not based on any unreasonable determinations of fact. To prevail on an ineffective assistance of counsel claim predicated on the failure to file a motion to suppress evidence, a petitioner must establish, not only that counsel was ineffective under *Strickland*, but that the Fourth Amendment claim has merit and there is a reasonable probability the jury would have reached a different verdict absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The prosecution "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "At the outset, if a person in custody is to be subjected to interrogation," he must be warned "in clear and unequivocal terms" that (1) he has a right to remain silent; (2) any statement he does make may be used as evidence against him in a court of law; and (3) he has the right to the presence of an attorney, either retained or appointed. *Id.* at 444–45, 467–79.

The "[n]eed for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Id.* at 470. Thus, "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation," "this warning is an absolute prerequisite to interrogation," and "[n]o amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." *Id.* at 471–72.

18

Aycock has not sufficiently demonstrated that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. Aycock cannot demonstrate that a motion to suppress was meritorious. As the Nevada appellate court reasonably noted, there was substantial evidence in the record to support the finding that Aycock was given *Miranda* warnings at the beginning of custodial interrogation. On direct examination, Aycock testified that he did not want to speak to the police because he didn't have a lawyer. ECF No. 35-6 at 63. However, during cross-examination, when reviewing his interview with police, Aycock admits that the officers read him his rights and he admits that he never requested a lawyer. *Id.* at 74-75. Although a detective testified regarding interrogation techniques used by police officers, such deceptive techniques were not used while interrogating Aycock and the detective denied lying to Aycock. The detective further testified that a detective read his *Miranda* rights to Aycock, that Aycock did not invoke his right to remain silent, and that Aycock did not invoke his right to an attorney. ECF No. 35-3 at 81-82. He also testified that Aycock did not admit to being at the scene of the shooting until he was shown photographic evidence. *Id.* at 97.

In light of the record before it, the Court cannot say that a motion to suppress Aycock's statement to the police would have been successful. Similarly, as reasonably found by the Nevada appellate court, Aycock failed to demonstrate that his counsel was deficient for failing to request a jury instruction on the voluntariness of his statement to the police. Aycock is denied federal habeas relief for Ground 6.

### g. Ground 7—Ineffective Assistance re: Appellate Counsel

In Ground 7, Aycock alleges that appellate counsel rendered ineffective assistance for (1) failure to object to the hearsay testimony of Washington, and (2) failure to argue that the jury instructions regarding affray and trespass were improper because they improperly referenced uncharged bad acts which

19

prejudiced Aycock. ECF No. 27 at 18. He asserts that appellate counsel performed deficiently by failing to raise these issues on appeal and such performance prejudiced him. *Id.*

### i. State Court Determination

The Nevada Court of Appeals held:

Aycock claimed that appellate counsel was ineffective for failing to argue that the hearsay testimony by a witness regarding something the victim said should not have been admitted. While the statement was hearsay and probably should not have been admitted, Aycock failed to demonstrate that the error was not harmless given the other testimony and evidence presented at trial. Therefore, he failed to demonstrate this claim had a reasonable probability of success on appeal. *See Richard v. State,* 134 Nev. 518, 526, 424 P.3d 626, 632 (2018) (stating hearsay errors are analyzed for harmless error). Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

Aycock claimed that appellate counsel failed to fully brief an issue on appeal. He claimed appellate counsel tried to argue that the jury instructions regarding affray and trespass were improper because they improperly referenced uncharged bad acts without the court first conducting a *Petrocelli* hearing. Aycock failed to demonstrate that the jury instructions improperly referenced uncharged bad acts and that a *Petrocelli* hearing was necessary. Affray and trespass were res gestae of the crimes, *see* NRS 48.035(3), and thus no *Petrocelli* hearing was necessary. *See Bellon v. State,* 121 Nev. 436, 444, 117 P.3d 176, 180 (2005). Accordingly, Aycock failed to demonstrate that this claim had a reasonable probability of success on appeal had counsel more artfully argued this claim. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

ECF No. 37-12 at 13-14.

### ii. Analysis

To prevail on his ineffective assistance of appellate counsel claim, Aycock must show his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, he "would have prevailed on his appeal." *Smith v. Robbins,* 528 U.S. 259, 285 (2000). When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland,* 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney,* 882 F.2d

20

1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*

The Nevada Court of Appeals reasonably concluded that Aycock failed to demonstrate prejudice. Aycock did not demonstrate a reasonable probability of success on appeal but for appellate counsel's failure to challenge the hearsay statement in Washington's testimony. As stated by the Nevada appellate court, given the other testimony and evidence presented at trial, the failure to object to the hearsay statement was harmless because Aycock cannot demonstrate he would have prevailed on appeal but for appellate counsel's error.

In addition, the Nevada Court of Appeals reasonably determined that Aycock failed to demonstrate that appellate counsel's failure to argue that jury instructions were improper had a reasonable probability of success on appeal. Appellate counsel challenged the jury instructions on appeal based on prejudice and confusion and his challenge was denied. ECF No. 36-5 at 11-12. As determined by the state appellate court, the jury instructions did not reference uncharged bad acts. The affray and trespass, however, were part of the course of criminal conduct at issue in the case. Even if appellate counsel presented a different or more artful argument regarding the jury instructions, Aycock failed to demonstrate a reasonable probability of success on appeal. Aycock is denied federal habeas relief for Ground 6.

## IV. Certificate of Appealability

This is a final order adverse to Aycock. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. §

2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**V.     Motion to Seal**

Before the Court is Respondents' Motion for Leave to File Documents Under Seal (ECF No. 38). Respondents seek leave to file under seal one document: Exhibit 46, Petitioner's Presentence Investigation Report ("PSI") (ECF No. 39-1), dated July 18, 2019. Under Nevada law, the PSI is "confidential and must not be made a part of any public record." Nev. Rev. Stat. § 176.156(5).

Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a compelling need to protect Petitioner's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. Accordingly, the Motion (ECF No. 38) is granted, and Exhibit 46 (ECF No. 39-1) is considered properly filed under seal.

**VI.     Conclusion**

It is therefore ordered that Petitioner Devontay Aycock's second amended petition (ECF No. 27) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that Respondents' motion for leave to file exhibit under seal (ECF No. 38) is granted. Exhibit 46 (ECF No. 39-1) is considered properly filed under seal.

It is further ordered that the Clerk of the Court is directed to substitute Jeremy Bean for Respondent Ely State Prison, enter judgment accordingly, and close this case.

DATED THIS 17th day of March, 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

23